'Terms' on Defendant's Exhibit No. 1, came to be used? Defendant's Counsel: I object as incompetent, and upon the ground that the word 'net' on the bill head is not capable of being explained by this witness. (Objection overruled. Defendant excepts.) Defendant's Counsel: I object further upon the ground that it is incompetent for the witness to give any conclusion of any statement of fact. (Objection overruled. Exception.) A. It was done so that Mr. Luengene would not be allowed any discount of the amount of the sale of goods. For instance, take 103, hall stand, which is marked $43. The price of that originally was $67, and 10 per cent. off for cash would bring that amount down too low, so that it was marked down; and that was the object of leaving the word 'net,' so that the defendant would not expect any percentage off. By the Defendant's Counsel: Previous to this time we had put in the word 'net' on bills which were subject to litigation. We put the word 'net' on every bill of goods of the 1,461 dollars. Defendant's Counsel: I offer this paper for identification. (Paper received, and marked 'Defendant's Exhibit No. 2,' for identification. This Defendant's Exhibit No. 2, for identification, contained the words 'Terms net cash.') Defendant's Counsel: I now offer Defendant's Exhibit No. 2, for identification, in evidence. (Same excluded. Defendant's counsel excepts.) Witness: The word 'net,' on Exhibit 2, for identification, does not mean anything different from the word 'net' on Exhibit No. 1. I claim that the goods mentioned in Exhibit No. 2, for identification, where the word 'net' is, were sold, and were not consigned. (This was the bill for $1,461.)"

It is clear that this exhibit should have been admitted, since the witness said that both Defendant's Exhibit No. 1, which contained some of the goods claimed by the plaintiffs as consigned, but which had the words thereon "Terms net," and the Plaintiffs' Exhibit No. 2, which was excluded, and had the words "Terms net cash," were for goods sold, and not consigned. The defendant was therefore entitled to have this exhibit, with the evidence, admitted for the consideration of the jury.

We have reversed this case on a former trial (17 Misc. Rep. 78, 39 N. Y. Supp. 850), and therefore wish to say that it is not our desire or wish to reverse, but where a clear and substantial error is committed, as in this case, it is right and just and best for all concerned; and if, on the new trial, these errors can be avoided, a success may be obtained which will stand. There are other exceptions in the case, but we think these sufficient to cause our action.

Judgment and order is, for these reasons, reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(20 Misc. Rep. 10.)

LA PASKA v. WEIL et al.

(City Court of New York, General Term. April 1, 1897.)

MECHANICS' LIENS—NOTICE—FAILURE TO SERVE ON OWNER.
    A lien is not invalidated by failure to comply with the provisions of Laws 1885, c. 342, § 4, that "every claimant shall within ten days after filing his notice of lien as hereby provided serve a copy of such notice upon the owner," and that "after such service such owner * * * shall not be protected in any payment" to the contractor or other claimant.

Appeal from special term.

Action by Raphael La Paska against Samuel Weil and others to foreclose a mechanic's lien. There was a judgment in favor of plaintiff, and defendants appeal. Affirmed.

Argued before FITZSIMONS and CONLAN, JJ.

Emanuel Arnstein, for appellants.
Irons & Todd, for respondent.

CONLAN, J. This is an appeal from a judgment rendered at a special term after a trial by the court without a jury; the action having been brought for the foreclosure of a mechanic's lien for the sum of $450 filed by the plaintiff against John McNally, as the contractor, and Samuel Weil, owner, and against certain real estate on the easterly side of Amsterdam avenue, between 133d and 134th streets, in the city of New York. The defendant Weil alone appeals.

It appears from the plaintiff's testimony that he entered into a contract with the defendant McNally for the stonework of a building at 133d street and Amsterdam avenue, to completion, for the sum of $900, on the 13th day of May, 1895, and that McNally told him that the walls were to be of a height of 7 feet and 6 inches, and the contract price of $900 was fixed for that height of wall, measuring by the number of cubic feet. Subsequently it was asserted by the plaintiff that the wall in some places was required to be of a height of 11 and even 12 feet, as testified to by himself and his foreman; and when this was brought by him to the attention of one Mayer (who, it was admitted, had sufficient authority to represent and bind Weil), he replied: "When you are ready for the iron beams, call the architect and measure the extra work. I will pay you." This was stated in the presence of McNally. The plaintiff testified to a conversation with McNally as follows: "I called McNally's attention to the work I had been doing at the time of the conversation. I had built the wall about eleven feet six, or twelve feet, and then McNally said: 'Go ahead. I will see you have your money.'" It is claimed on behalf of the plaintiff that these promises on behalf of Weil by Mayer and McNally form the basis of an entirely new contract,—a contract for extra work,—and that Mayer, as the representative of Weil, assented to it; and we are inclined to agree with him in this theory. It can hardly be conceived that the contract of May 13th for $900 for all stonework, which was based upon the height of the wall of 7½ feet, would have been entered into if it were known that a wall of more than 11 feet in height was really required. The plaintiff says no specifications were shown to him, nor did he even see any, but that McNally said they called for a wall 7 feet and 6 inches high, and on this the plaintiff seems to have relied for the terms of his contract of May 13th; and the conversations detailed by him were, we think, clearly admissible, as tending to establish a new contract, rather than to vary the terms of the contract theretofore existing. It is proper to say here that the testimony of the defendants' witnesses is in contradiction of the portions of evidence in the case above referred to, but we think

that the proposition contended for by the plaintiff was established by clear preponderance of proof. The witness McNally, as representing the defendant Weil, does not go so far as to say that he did not agree that the plaintiff should be paid for this extra work; nor, indeed, was he asked so to testify. The precise question put to him by the counsel for the defendants was, "Q. Do you remember any such conversation with the plaintiff at any time?" and his answer was simply, "No, sir," which is hardly equivalent to saying he did not have the conversation referred to, and falls short of a denial. The plaintiff's witnesses in rebuttal make it still more apparent that an agreement for the extra work was actually made by McNally with the plaintiff, and that McNally undertook to shield himself by the declaration of the witness Todd, who was the plaintiff's counsel, and was called to the stand to give the conversation between him and McNally after the commencement of this action, when the allegation in McNally's answer was called to his attention, to the effect that he had sworn that no extra work was done by the plaintiff; and he stated that his reason for so doing was that pay for the extra work was due from Mr. Weil, the owner, and not from him (McNally), and this statement was not denied. We are therefore of the opinion that the plaintiff has established a contract upon which he is entitled to recover, and in the form as he has brought his action, if he has done nothing to defeat that right of recovery. The failure to serve the notice of lien within 10 days after filing in no way affects the validity of the lien. The statute never intended any such thing, and we have been unable to find any reported case which has so construed it. The object of the service is but notice, and to protect the owner against making any payment after notice filed, and to prevent payments by him, thus also affording a like protection to the lienor.

The only other question presented on this appeal which might, in any aspect of the case, tend to defeat the recovery, is an alleged failure to show that at the time of filing the mechanic's lien, and at any time thereafter, there was any sum due to the defendant McNally from the defendant Weil; but as we have seen that the recovery of the plaintiff is sought upon a separate contract with the owner, having no relation whatever to his contract of May 13th, or of that between the owner and contractor, the plaintiff's right to recover is not thereby in any way affected.

From a careful examination of the whole case, we are of the opinion that no errors were committed by the trial justice which called for a reversal, and that the judgment was properly entered in accordance with the findings made, and that the judgment therefore so entered should be affirmed. The judgment therefore is affirmed, with costs.

FITZSIMONS, J., concurs.